UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHRISTINE FORSYTHE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No: |
| | ) |
| ARTERA SERVICES, L.L.C | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT AND JURY DEMAND

1. Plaintiff Christine Forsythe respectfully makes and presents the following allegations and claims against defendant Artera Services, L.L.C. (f/k/a PowerTeam Services, L.L.C), a Delaware corporation that maintains its principal place of business in Cobb County, Georgia, within the jurisdiction of this court.  Plaintiff seeks compensatory damages, punitive damages, attorney's fees and other relief based on defendant's pattern and practice of unlawful employment discrimination within this judicial district.

## JURISDICTION AND VENUE

2. This court has jurisdiction over all causes of action asserted in this matter under 28 U.S.C. §1331 and 1343 and under 28 U.S.C. § 1367 because this action centers on questions of federal law as well as pendent state law claims.

3. This court has personal jurisdiction over defendant because it maintains its principal place of business within the Northern District of Georgia and its Atlanta Division.

4. Venue is proper because the causes of action stated herein arose within this judicial district.

## PARTIES

5. Plaintiff Christine Forsythe is a natural person who resides in Fulton County, Georgia.

6. Defendant Artera Services, L.L.C. is a limited liability corporation organized and existing under the laws of the State of Delaware and controlled by Clayton, Dubilier & Rice L.L.C.

## FACTS COMMON TO ALL COUNTS

7.  Plaintiff is a black woman of Jamaican heritage who also is a member in good standing of the Bar of the State of Georgia and is a member in good standing of the Bar of the State of Florida.

8.  During or about May 2019, plaintiff was hired and employed as an attorney by defendant and given the job title and rank of "Corporate Counsel – Litigation and Claims."

9.  During all relevant periods, defendant maintained a small internal team of lawyers to manage, oversee and direct its legal affairs and activities throughout the United States.  This internal team of lawyers was managed and led by William Thomas Newell, who was the Chief Legal Officer and Secretary and the person assigned overall responsibility for the management and direction of the internal legal team.  William Thomas Newell sometimes is known also as W. Thomas Newell and Tom Newell.

10. Throughout her employment relationship with defendant, plaintiff managed a sizeable staff of claims representatives and she was responsible for insurance claims, risk management, active litigation, some merger and acquisition activity, some employment law advice and counsel, some contract management activities and, eventually, extensive research and guidance regarding defendant's response to the SARS-CoV-19 pandemic.

11. During December 2019, defendant hired Harrison Anthony, a white man, who was initially given the job title and rank of "Corporate Counsel – Contracts."  Harrison Anthony's core job title during the relevant period always was, like plaintiff, "Corporate Counsel."  Harrison Anthony is not a party to this lawsuit.

12. In this role, Harrison Anthony did not supervise any staff members – his primary job responsibilities were to draft and revise contracts involving defendant and its subsidiaries and to assist in responses to Requests for Production ("RFPs").

13. Harrison Anthony graduated from law school two years after plaintiff, and he has less experience as a practicing lawyer than plaintiff.

14. Both plaintiff and Harrison Anthony were hired by W. Thomas Newell, and their pay and benefit packages were set primarily by him.   As Chief Legal Officer and Secretary, W. Thomas Newell had the right periodically to change or alter the pay and benefit packages assigned to plaintiff and to Harrison Anthony, his subordinates.

15. Both plaintiff and Harrison Anthony were assigned the core job title "Corporate Counsel."  Plaintiff, however, was, in addition to her portfolio of legal tasks, assigned to manage and lead a team of claims agents.  Harrison Anthony, by contrast, never was assigned responsibility to supervise any team members.

16. Beginning at a time unknown to plaintiff but at least during her employment relationship with defendant, W. Thomas Newell, acting on behalf of defendant, decided to pay, and actually paid, Harrison Anthony, a white man, a considerably higher salary than the salary paid to plaintiff, a black woman, for work that was at least comparable.  W. Thomas Newell, while acting on behalf of defendant, deliberately and utterly disregarded the requirements of law when he assigned to plaintiff a lower salary for work that was at least comparable to Harrison Anthony's.

17. On information and belief, beginning during December 2019 and continuing afterwards, defendant paid Harrison Anthony at least $1,300 weekly more than plaintiff for work that was at least comparable.  Moreover, defendant had many opportunities legitimately to adjust the salary amounts paid to plaintiff but deliberately and repeatedly decided to maintain these pay levels at unfair and unlawful levels for plaintiff, a black woman, and Harrison Anthony, a junior white man.  These salary decisions, made by W. Thomas Newel on behalf of defendant, were part of a pattern and practice of deliberate, intentional, wanton, malicious and unlawful behavior under governing anti-discrimination laws.

18. Throughout her employment relationship with defendant, defendant did not keep or maintain a scale of salaries and benefit packages for members of its salaried workforce.  This failure was sloppy and irresponsible, and it gave managers wide discretion to assign salaries randomly to subordinates.  The absence of a legitimate process to establish salaries based on a) a seniority system; b) merit system; or c) a legitimate measuring or production system also gave managers like W. Thomas Newell an improper option to set and establish pay for salaried workers that were unlawful because they compensated women and black workers like plaintiff at substantially lower levels.

19. The toxicity of the unlawful discrimination levels maintained by W. Thomas Newell on behalf of defendant is evidenced further by his decision to eliminate plaintiff's job while preserving Harrison Anthony's position.  The effective date of this job elimination demonstrates W. Thomas Newell's overall racial insensitivity and indifference, and it shows the racially hostile and insensitive work environment maintained by defendant.

20. Defendant eliminated plaintiff's job and terminated her employment effective June 19, 2020.  This occasion is known in the Atlanta region and elsewhere as "Juneteenth," the so-called Black Independence Day.  Plaintiff received her last salary payment on or about July 15, 2020.

21. Plaintiff has suffered, and continues to suffer, significant emotional and physical harm since she actually learned that she was being paid substantially less money than Harrison Anthony.  The wonton and wretched actions of W. Thomas Newell, acting at all times on behalf of defendant, has caused her to seek treatment and advice from a therapist after she realized that her employer viewed and treated her as a lesser human being.

22. Plaintiff's mental anguish has affected and impaired her ability to be employed, to be a wife, and be an effective, caring and loving mother.

23. Plaintiff has attempted to present a Charge of Discrimination to the Atlanta office of the US Equal Employment Opportunity Commission. Given the COVID crisis and budgetary and staff restrictions, this office apparently has not been able to receive, consider or process her charge application (and the charge applications of others) within the time restrictions of the applicable Georgia limitations periods. Hence, it is expected that plaintiff may seek leave to amend this complaint to add a claim under Title VII in the future.

### COUNT ONE
### (Section 1981)

24. As detailed above, defendant violated the Civil Rights Act of 1866, 42 U.S.C. § 1981, by paying, without justification or right, plaintiff less money on an annualized basis than her white counterpart because she was a black woman.

25. As a result of defendant's deliberate and unlawful activities as detailed above, plaintiff has been harmed and injured, and she is entitled to an award of money damages in an amount to be determined, including an award of punitive damages, and attorney's fees.

### COUNT TWO
### (Intentional Infliction of Emotional Distress)

26. As a proximate cause of the foregoing outrageous and extreme conduct of W. Thomas Newell, while acting on behalf of defendant, plaintiff has suffered, and continues to suffer, serious and significant emotional harm and injury.

27. Based on defendant's intentional and deliberation infliction of emotional distress, plaintiff is entitled to an award of money damages in an amount to be determined.

### COUNT THREE
### (Equal Pay Act)

28. The foregoing acts and omissions of defendant constitute a pattern of violations of the Equal Pay Act, 29 U.S.C. § 206(d) because plaintiff, a woman, was paid considerably less than her male counterpart for work that required similar or greater skill, effort, and responsibility under similar working conditions.

29. Pursuant to 29 U.S.C. § 216 *et. seq.*, plaintiff is entitled to an award of compensatory damages, liquidated damages in an amount to be determined, and reasonable attorney's fees.

### COUNT FOUR
### (Declaratory Judgment)

30. An actual justiciable controversy exists between the parties based on the repeated denials of defendant that it unlawfully discriminated against plaintiff when it paid her less money for work that was at least comparable to the work of a white male colleague.

31. Based on the foregoing acts and omissions of defendant, plaintiff seeks a declaration, under the Declaratory Judgment Act – 28 USC Section 2201 and 2202 – and Rule 57 of the Federal Rules of Civil Procedure, that defendant, while acting through Chief Legal officer and Secretary W. Thomas Newell, knew or should have known that a) it was actively engaging in a pattern and practice of violating plaintiff's civil rights; and that b) in doing so, W. Thomas Newell, a member of the Bar, knowingly and willfully encouraged defendant improperly to continue to violate plaintiff's civil rights and liberties.

## **JURY DEMANDED**

32. Plaintiff demands a trial by jury.

Respectfully submitted,

By: *s/Natalee Drummond-Fairley*
Natalee Drummond-Fairley
GA Bar No.  238119

The Fairley Firm, LLC
1100 Peachtree Street
Suite 200
Atlanta, Georgia 30309
(404) 596-6600
Email: natalee@fairleyfirm.com

Dated:   November 9, 2020